The Court of Appeals for the Ninth Circuit is now in session. This is Judge Gould, and I'm presiding today, and we welcome all the advocates with us. First of all, I want to say that I'm delighted to be able to sit with visiting Judge Selma, who graciously gave up some time from his busy docket to help us on the Ninth Circuit with our case law, and I'm sure Judge Ikuta joins in my thanks to Judge Selma. And Judge Ikuta, I want to say it's a pleasure to be sitting with you again, so thank you. The first case on our docket is entitled John Doe v. Roe, No. 22-15757, and it's set for 10 minutes per side. For the appellant, may it please the Court, Joshua Colton on behalf of Roe for the appellant I'm going to try to get through the several questions the Court posed in the clerk's order within the 10 minutes allotted. If there's any time left over, I'd like to rebut, but I imagine I'll run out of time. The first question, in two parts, citing Hansen v. Schubert, is whether this Court has jurisdiction over the June 1 order and by way of the June 23 motion to reconsider that was filed thereafter. And the answer is yes. This Court has jurisdiction because a motion to reconsider tolls the time to appeal. The problem in Hansen was that the motion to reconsider was not timely. And as Hansen points out, a motion to reconsider might be considered a motion under Rule 59e or under 60b. I think in this case 60b probably makes more sense. But in either case, there's a 28-day deadline. In that case, since the motion to reconsider hadn't been filed in time, the underlying motion that was being sought to be reconsidered could not be appealed. On the second question the Court asked is, do you have jurisdiction over the motion to reconsider itself? Excuse me. Yes. I muted myself and I couldn't get in my question. On the June 1, 2021 order, could you address whether that's final? Because opposing counsel suggests that not all defendants were dismissed, so it wasn't final. Well, they've all been dismissed now, and it was final. It was an order vacating a—well, at that moment, I suppose it was a refusal to vacate a—the order was not granting a motion to vacate an injunction. So at that point in time, I suppose it was appealable under 1292. But at this point, by the time the motion to reconsider had been denied, the whole case had been dismissed. So does that answer your question, Your Honor? So there's nothing—there's nothing more pending. So the June 1, 2021, even though it was interlocutory at the time, you're saying has merged with something or it's now final? Well, it's now—it's now final, and it was final as to Roe because the whole case was disordered, the whole case against Roe. There were other parties, and that's why, you know, arguably—arguably the court could reconsider at that point because there were other parties who were dismissed, I think, a week or two later. But under 1292, if it were interlocutory, it would be appealable on that basis. But certainly, by the time this appeal was filed, everything was final. So you said that the remaining defendants were dismissed later, and is that in the docket? Because I didn't— Yes, I believe it is. I believe it is. Yes. I mean, within a couple of weeks, around the time of the attorney's fees motion or something like that was filed. Within a couple of weeks, they were all dismissed voluntarily. Okay. Okay. And then to the second question, the motion to reconsider is—you have jurisdiction over that. In Hansen, one didn't have jurisdiction because in Hansen, it was still an interlocutory appeal, and the motion to reconsider is not one of the motions that would be—over which one would have—the court would have jurisdiction on an interlocutory appeal. Turning to the second question, which I think is an interesting question, what's the effect of Rule 65b-2, which, as the Court says, indicates that a temporary restraining order expires after 14 days, what's the effect of that on the district court's determination, and does it render this whole case moot? The answer is no. Obviously, to some degree, that would grant my client's relief now if it were determined that that order had expired 14 days after. Is it your position that the TRO is still in effect? Yes. Yes. How does that comport with the necessity to have findings and so on in the automatic expiration unless renewed? Well, yes. Well, the answer—I'm sorry. I interrupted you, Your Honor. Go ahead, please. The answer is it's not an automatic expiration. There is a case in 1941 that said so, but it has not been followed. Just looking at the text of Rule 65, what it says— Just to interject here, are you familiar with the Supreme Court's opinion in Granny Goose? Yes. Yes, I am, Your Honor. The Granny Goose— Which indicates that it is automatic because you couldn't impose a contempt citation unless the TRO had been extended or turned into a preliminary injunction, so that's probably indicated that it was an automatic expiration. Your Honor, I believe, and I am prepared to talk about this, the Granny Goose case, Granny Goose Foods case, is dealing with a federal statute that—it's a very special statute and the court says so—that when a case is removed, all state injunctions are then essentially deemed to have been issued and valid in the federal court without the federal court having to do anything until one moves to—on its terms, until one moves to dissolve them. And in that case, that specific case, the court said the federal court is deemed to have issued a proper Rule 65 TRO that expires automatically. If Granny Goose stood for the effect that the TRO expires automatically, then it was overruled a month later in Sampson v. Murray, in which the court said—and this is responding to your question, Judge Selma—the text of Rule 65 says that it should indicate that a temporary restraining order—sorry, I'm sorry—the text of Rule 65 says that every temporary restraining order granted without notice shall expire by its terms—I'm sorry, that's what it used to say, and the stylistic changes since then, which don't change the meaning—say the order expires at the time after entry not to exceed 14 days that the court sets. So this question, what happens when the court—your question, I understand, is if the court did not comply with the rule—with all the requirements of Rule 65, including the time limit, what is the effect of that? That question has been answered by the Supreme Court in Sampson v. Murray, 415 U.S. 61, 86-88, and I'd particularly direct you to footnote 58, which I think is discussing this precise situation where the majority was grappling with a dissent by Justice Marshall, who also didn't think that a TRO expires automatically. He thought if you issue a TRO that's too long, if the court issues a TRO that's too long, what the recipient of that TRO should do is go to the court and ask it to dissolve it, give the court an opportunity to do all the proper things like Your Honor said. The problem with that is that what if the court doesn't do it, which is the situation we're in now, and what the majority said in Sampson v. Murray in footnote 58 is to all the potential danger of preliminary injunction in terms of duration, remember, we're faced with an order that doesn't say it's temporary, it's a permanent—apparently permanent order. But isn't it defective in terms of what's required for a preliminary injunction? It's absolutely defective. No findings, no hearing. Absolutely defective. And what the court said in Sampson v. Murray is that a defective TRO that appears—I mean, this court—this didn't call itself a TRO, but an ex parte order that defies the standards of Rule 65 by extending longer than it should, should be treated on appeal as a preliminary injunction, and if it doesn't meet the standards of a preliminary injunction, the court in Sampson v. Murray reached the merits, which is more than the circuit courts that it was following had previously done. And Judge Marshall was upset by that and issued an opinion saying that that's wrong. But the court's point in footnote 58 is otherwise what the court has done is immunized its ruling from judicial review. And I mean, lastly, if it were, if it did expire, even if it had expired on its terms, if it had complied and said this order expires in 14 days, is it reviewable, the court's last question? Yes. The Nebraska Press gag order had expired by the time the Nebraska Press heard it. It's capable of repetition evading review. Gag orders usually are temporary, and they usually don't get up to the Ninth Circuit until they've already expired. But the courts frequently at least issue an opinion stating that that was an invalid prior restraint, even if it had only lasted 14 days. Does the court have any further questions? I'll reserve any time I have left. Thank you. Mr. Mendelman. May it please the court. As this court noted in its March 15, 2023 order, there are two fundamental issues in this appeal, jurisdiction and mootness. To succinctly answer the court's questions, this court lacks jurisdiction and the case is moot. As to jurisdiction, what we didn't hear in my colleague from the other side's comments this morning is the chronology here. So Rule 41 was our request for voluntary dismissal, and that was granted, and the court necessarily had to find a proper purpose. And when it did that, it terminated as moot the pending motions because that put an end to the matter. And Row 1 never objected to that request. They didn't appeal that request. So I don't know what the actual case in controversy is that Row 1 believes it has preserved for this court to weigh in on, but our position is there is nothing. Now the request for reconsideration clearly cannot reawaken an issue that has already been laid to rest. That's the Hansen case that we cited in our brief that the court noted in its order. And at footnote 2, Hansen makes an important point, which is that just because a court may reconsider a prior order doesn't mean that a motion for reconsideration may be brought at any time. And Row 1 waited six months before it brought its motion to vacate the pseudonym order. So I think it's very clear that there was not due diligence. This issue has not been teed up properly for the court, and there's really no case in controversy here whatsoever. As to mootness, which was the discussion we heard, Mr. Colton ended by saying the district court immunized its ruling from judicial review. That's just not the case. What Row 1 should have done had it believed that it wanted to tee this issue up for this court is file a writ of mandamus. That is very clear in the cases that construe Rule 65. And I'll cite the court to In Re King World Productions, Inc., which is a Sixth Circuit case from 1990, but it cites to Ninth Circuit precedent. And its site is 898F256 at 59. And I would like to just recite to the court what it says. It says a temporary restraining order is not a final appealable order. And in the context of a First Amendment prior restraint, a direct appeal after the conclusion of the proceedings in the district court would be meaningless. Indeed, mandamus is the only vehicle for obtaining appellate review of an improperly issued temporary restraining order when the First Amendment runs afoul of a conflicting right and prior restraint may result. And then it cites to Columbia Broadcasting Systems, Inc. versus U.S. District Court for the Central District of California. That's a Ninth Circuit 1983 case. The site is 729F2nd 1174 with a pin site of 1177. So is it your position at the TRO that the district court issued on October 5th, 2020, replaced and didn't expire of its terms? I'm sorry, did I cut out? Just for just for a brief word or two, Your Honor, if you could just repeat it. I apologize. Yes, I was just asking if it's your position that the TRO issued by the court in October 2020 is still in place or expired by its terms under Rule 65. Yes, my position, I would prefer not to take a position. I would prefer to let the court make its decision. I think that if the court applies Rule 65 here, it's clearly expired. I think if the court does not apply Rule 65, there's I guess some argument could be made that it is still in effect. But I don't I my position is that or our position is that the order says what it says. But there's no case in controversy for this court. Direct appeal is clearly moot. And it's if row one really wanted to challenge this, there was clear ways and litigation choices that it made below that essentially self sabotaged itself if it wanted this court to weigh in on it. So I apologize that doesn't answer your question directly. But we're our position is that if Rule 65 applies, then, of course, it's moot. We're not. And it seems it's very clear that a writ of mandamus would be the way to properly challenge a temporary restraining order. If that's if that's what the pseudonym order is being construed as. And we would submit it. Council, I have a question for you. Yes, probably based on my lack of knowledge, but. I'm. Can you give me a clue as to why? There's an issue that arises in the first place with this intensity about the use of a pseudonym. Why did. Why did the defendant. Challenge the pseudonym. I'm sorry, the question is for me, Your Honor. Is the question for me? Yes, sorry, we the challenge of the pseudonym, the first the problem with the order is that prevents the court sorry, prevents the media, including my clients from disclose it from discussing in the media the fact that they were sued by a notorious cartel boss. I mean, it's not even clear because the order is so vague. And given the position that opposing counsel was taken as to the scope of the order, my clients have been unable to report on who it was that sued them in this court. And it's kind of shocking. It's a prior restraint and on its face, it appeared to be permanent. I was somewhat shocking to me that when I brought to the attention of the court that it issued a prior restraint ex parte that the court didn't vacate it and doesn't seem did not seem to understand when I moved to reconsider that that's what the order by its terms does. Rule 65 is all about clarity. And and in terms of if I had defied this order and argued that it had expired in 14 days on a in a criminal contempt proceeding, I would be barred from making that argument. You have to make that argument directly by moving to dissolve. That's what Justice Marshall said in footnote 58. You have to move to dissolve and then take it up on appeal. And it has now taken a very long time. But for all that time, my clients have not been able to report that a federal released federal prisoner, notorious drug lord, had moved into this area and had sued them for he'd been released from prison and moved to this area. I mean, the original story they reported, all those stories remained on the press, but they were forbidden from disclosing the identity of a criminal defendant who had sued them in federal court by order of the federal court, by virtue of a permanent restraint of prior restraint that has not been withdrawn by the court. That's why I'm here, basically for that principle. It's a very emotional principle for the media. I can tell you that. OK, thank you. Thank you. So was that my rebuttal or I'm sorry, I'm not I'm confused about the time that wasn't so I think Council still has time. I'm sorry. Wait a second. That was a response to my inquiry. OK, but the council still has time. I don't I don't want to take it. Yeah, right. Mr. Mendelman, did you have anything else that you wanted to say on behalf of the county? No, your honor, thank you. They will go back to Mr. Quinton, I think your time was up. I had a few minutes for for for about the only thing I'll say is I'm sorry. Wait, just wait a second. I'm sorry. Your your time was up, but I said I would give you two minutes for rebuttal. Oh, I'm sorry. I won't take the full two minutes. Your honor, this notion that there's no case or controversy is is wrong. The case and controversy we have is made clear in the papers in which Mr. Mendelman insisted that the order still stands and still binds me. When I went back to the district court and asked him to reopen the motion to vacate, it was in part because I'd negotiated with Mr. Mendelman and asked him to stipulate that it was no longer in effect. And he stated that it was. He's got a procedural notion that the only way to oppose this is by writ of mandamus. But it's that that can't be right. It can't be right that having done exactly what I should do, ask the court to vacate when the court didn't do it, ask it to reconsider and then take it up on appeal. The principle that a motion to reconsider tolls the statute is fundamental to jurisprudence. It gives the trial court a chance to fix what it did before this court has to deal with it. That's why in the Briggs case that I cited in the brief, this court implied in a jurisdictional statute that didn't even list the motion to reconsider as something that told it as tolling the statute. Because it's just it's inherent in the principle of appellate review that if they're still pending an opportunity to revisit a decision by the district court, it should be take that time and then then take your appeal. I thank the court for all the time it's given me. Yeah, I thank both counsel. The case of Doe v. Rowe shall now be submitted.
judges: GOULD, IKUTA, Selna